[No. 13850-6-II.   Division Two.   May 4, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. DAVID ANTHONY HUNOTTE, *Appellant.*

*Valla M. Wagner,* for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney, Chris Quinn-Brintnall, Senior Appellate Deputy,* and *John M. Neeb, Intern,* for respondent.

PETRICH, J. — David Anthony Hunotte appeals a Pierce County Juvenile Court order requiring him to pay to the Juvenile Court the sum of $2,161 as restitution to a crime victim, Randy Stern. He contends that not all of the loss or damage suffered by Stern came about "as a result of the offense" for which he was convicted. We disagree and affirm the Juvenile Court's restitution order.

On December 29, 1989, 16-year-old David Anthony Hunotte broke out the rear window of a 1976 Buick Skylark that was parked in a parking lot of a Pierce County motel. Hunotte then reached into the car and removed two speakers.

The owner of the car, Randy Stern, was coming out of the motel when he heard the sound of a car window being shattered. Stern looked over the motel balcony and saw Hunotte running away from Stern's car carrying the speakers. He then observed Hunotte get into the passenger side of a Ford Mustang automobile that was parked about 20 yards from Stern's car. The Mustang was driven away. Stern quickly went outside and drove off in his Buick in an effort to locate the other car. He discovered it a short distance away in another part of the motel parking lot. The driver of the

Mustang, Frank Swain, apparently tried to elude Stern by driving his car out of the lot. Stern reacted by pulling in front of the Mustang to block its exit. The two cars collided and "both cars kept pushing"[1] until the Mustang was able to exit onto Hosmer Street.

The testimony given by Hunotte and Stern differed significantly concerning the actions of each driver during the ensuing events. It is apparent, however, that Stern pursued the Mustang for a considerable distance, during which both cars may have been driven erratically. The two cars collided several times and, as a consequence, Stern's Buick was extensively damaged. The Juvenile Court believed that the collisions between the Buick and the Mustang resulted from Swain's "hitting his brakes" while Stern was close behind the Mustang. Both parties agree that both speakers were destroyed when they were thrown out of the Mustang during the episode.

Hunotte was charged in Pierce County Juvenile Court with two gross misdemeanors, vehicle prowling in the second degree (RCW 9A.52.100) and malicious mischief in the third degree (RCW 9A.48.090(1), (2)). The information alleged that Hunotte "did unlawfully with intent to commit a crime . . . enter or remain unlawfully in a vehicle" and "did unlawfully and knowingly and maliciously cause physical damage in excess of $50 to a car window." He pleaded guilty to both charges.

The Juvenile Court conducted a restitution hearing before sentencing. Following that hearing, the juvenile court judge entered an order requiring Hunotte to pay $2,161 to Stern, an amount which would compensate Stern for all of the damage to his car and speakers. In making its ruling, the juvenile court judge said:

> The law is quite clear — and this is something you are going to have to learn the hard way, David — that when a

---

[1]Hunotte testified that Stern drove his car into the Mustang as the driver of the Mustang attempted to drive out of the parking lot. Stern said that the Mustang was driven into his car. The trial judge orally accepted Stern's version.

person is the victim of a crime . . . in their presence, they have every right to arrest the person who is perpetrating the crime against them. Just because you throw the speakers out the window doesn't mean that the victim simply has a right to pick up the mess that you left for him at that point.

Hunotte maintains that the Juvenile Court erred in setting restitution at $2,161. While Hunotte concedes he is obligated to pay Stern for the speakers and the broken car window, he argues that the sentencing court did not have authority to order him to pay restitution for the other damage to Stern's car. This damage, Hunotte asserts, did not result from the crimes committed by him, but by Swain. The State argues that the restitution order was lawful because the damage to Stern's car was a foreseeable result of Hunotte's attempt to avoid capture for his crimes.

Restitution in juvenile cases is governed by RCW 13.40-.190, which provides in pertinent part:

(1) In its dispositional order, the court shall require the respondent to make restitution to any persons who have suffered loss or damage as a result of the offense committed by the respondent. In addition, restitution may be ordered for loss or damage if the offender pleads guilty to a lesser offense or fewer offenses and agrees with the prosecutor's recommendation that the offender be required to pay restitution to a victim of an offense or offenses which, pursuant to a plea agreement, are not prosecuted. . . . If the respondent participated in the crime with another person or other persons, all such participants shall be jointly and severally responsible for the payment of restitution. . . .

■ The decision to impose restitution and the amount thereof are within the trial court's discretion. *State v. Bennett*, 63 Wn. App. 530, 535, 821 P.2d 499 (1991). We will reverse such an order only if it is manifestly unreasonable or the sentencing court exercised its discretion on untenable grounds or for untenable reasons. *State v. Smith*, 33 Wn. App. 791, 798-99, 658 P.2d 1250 (citing *State v. Cunningham*, 96 Wn.2d 31, 34, 633 P.2d 886 (1981)), *review denied*, 99 Wn.2d 1013 (1983). However, the power to impose restitution derives entirely from the statute. *State v. Davison*, 116 Wn.2d 917, 919, 809 P.2d 1374 (1991).

■ Under RCW 13.40.190, "[a] restitution order must be based on the existence of a causal relationship between the crime charged and proven and the victim's damages." *State v. Blair*, 56 Wn. App. 209, 214-15, 783 P.2d 102 (1989). Hunotte contends that the causal link here is so tenuous as to render the trial court's order an abuse of discretion. We disagree.

■ In *State v. Martin*, 102 Wn.2d 300, 304, 684 P.2d 1290 (1984), the court examined the legislative intent behind RCW 13.40:

> The brief recitation of the legislative intent behind the juvenile justice act, found in RCW 13.40.010, shows the strong policy behind the restitution and community service provisions in the act. RCW 13.40.010(2)(c) provides that one of the purposes of the act is to "[m]ake the juvenile offender accountable for his or her criminal behavior". . . . RCW 13.40.010(2)(h) states that another purpose of the act is to "[p]rovide for restitution to victims of crime". Furthermore, RCW 13.40.190(1) provides that the court "shall" require restitution and that restitution "shall be in addition to any punishment which is imposed pursuant to the other provisions of this chapter" unless the juvenile is unable to make restitution.

*See also State v. Bush*, 34 Wn. App. 121, 124, 659 P.2d 1127, *review denied*, 99 Wn.2d 1017 (1983).

In examining the causal relationship between the crime and the loss, it is clear that if the loss or damage occurs before the act constituting the crime, there is no causal connection between the two. *See State v. Ashley*, 40 Wn. App. 877, 700 P.2d 1207 (1985) (loss caused by first assault, but defendant convicted of second assault); *State v. Hartwell*, 38 Wn. App. 135, 684 P.2d 778 (1984) (victim injured in car accident, but defendant convicted of leaving the scene of the accident; thus, injury occurred before the act for which the defendant was convicted). Similarly, unless the victim incurs the loss or damage, there is no causal connection between the crime and the loss to support an order of restitution. *See State v. Morse*, 45 Wn. App. 197, 723 P.2d 1209 (1986) (mother's phone calls to victim, visits to victim in hospital, and attorney fees for civil remedy not compensable under statute).

In deciding whether the restitution order is within the trial court's statutory authority, Division One of this court has adopted a "but for" factual test in evaluating the causal link between the criminal acts and the victim's damages. *See State v. Blair*, 56 Wn. App. at 215; *State v. Harrington*, 56 Wn. App. 176, 180, 782 P.2d 1101 (1989); *State v. Barrett*, 54 Wn. App. 178, 179, 773 P.2d 420 (1989). In addition to determining whether the crime was a cause-in-fact of the loss, Division One has also declared that a reasonable person must foresee the loss as a consequence of the criminal act. *State v. Harrington*, 56 Wn. App. at 180; *State v. Steward*, 52 Wn. App. 413, 416, 760 P.2d 939 (1988) (restitution proper in taking motor vehicle without permission case when defendant abandoned car and it was subsequently stripped because "the damage [was] sustained as a result of that offense"). We agree with Division One's approach to the causation issue.

Hunotte contends initially that he cannot be ordered to pay restitution for losses that resulted from Swain's acts of driving the getaway car. This reasoning overlooks the plain language of RCW 13.40.190(1), which provides, "[i]f the respondent participated in the crime with another person or other persons, all such participants shall be jointly and severally responsible for the payment of restitution." In one such instance of joint participation, Division One of this court found restitution appropriate when the defendant was a passenger in a stolen vehicle when the damage occurred. *Barrett*.

In this case, the record is clear that Hunotte and Swain were joint participants in the breaking of the car window and the theft of the speakers. Swain waited behind the wheel of the Mustang a few yards from the victim's car while Hunotte broke in and stole the speakers. Hunotte jumped into the Mustang with his booty, and the Mustang immediately drove away. Swain drove the Mustang erratically as the victim gave chase. A rational trier of fact could certainly have found by a preponderance of the evidence that Hunotte and Swain were acting in concert during the theft and the ensuing effort to elude Stern.

■■ The facts also satisfy the "but for" and foreseeability tests of causation. First, it is clear that Hunotte's criminal act was the cause-in-fact of Stern's loss: but for the malicious mischief and theft, Stern would not have attempted to detain Hunotte. Second, it is not only foreseeable, but highly likely, that when a vehicle owner sees someone smashing a window in his or her vehicle and stealing the contents, the owner will try to apprehend the offender. Here, the damage was more than foreseeable, it was intentional. Hunotte and Swain, his driver, were detained by Stern, the victim and witness to the crime, when Stern blocked their getaway car. At that point, Swain rammed Stern's vehicle in an attempt to avoid being detained. This damage to Stern's vehicle was not merely foreseeable, but intended. Intentional damage is certainly foreseeable, and can easily be found to be "a result of the offense committed", in the words of the statute.

■ Finally, Hunotte contends that the act of ramming Stern's vehicle, and the ensuing attempt to elude him, were acts constituting other uncharged crimes and should not be the subject of a restitution order. A defendant cannot claim a legal excuse from the fact that the damage is the immediate result of specific acts that might constitute an "uncharged crime". *State v. Harrington*, 56 Wn. App. at 180. Furthermore, the definition of the crime for which a juvenile is convicted does not operate to limit the amount of restitution a court can impose. *State v. Selland*, 54 Wn. App. 122, 772 P.2d 534 (juvenile convicted of third degree malicious mischief, but actual loss was approximately $550, not less than $250 as required under the statute), *review denied*, 113 Wn.2d 1011 (1989).

Here, the sentencing court acted within its discretion and within its statutory authority when it ordered Hunotte to pay for Stern's losses incurred when Hunotte broke Stern's car window, stole his property, and damaged his vehicle while attempting to avoid apprehension.

MORGAN, J., concurs.

ALEXANDER, C.J. (dissenting in part) — While I agree with the majority insofar as they conclude that David Hunotte should be required to pay restitution for the broken car window and damaged speakers, I do not agree that Hunotte should be held financially responsible for the damage that was caused to Stern's automobile during the car chase that followed the theft of Stern's speakers. In my judgment, a reasonable person would not foresee that Stern would experience the loss that he did suffer at the hands of Hunotte's companion, Swain, as a consequence of Hunotte's criminal behavior. The relationship between Hunotte's criminal act and the loss to Stern is too attenuated to justify an order requiring payment of all of the restitution Stern seeks. I, therefore, respectfully dissent in part.